THE STATE OF KANSAS, *ex rel. A. W. Lamkin, County Attorney of Stevens County*, v. JOHN A. KELLY.

No. 203.

1. QUO WARRANTO —*Jurisdiction of Courts of Appeals.* Courts of appeals have original concurrent jurisdiction with the supreme court in cases of *quo warranto* in their respective divisions.

2. ———— *Proper Party Plaintiff.* The county attorney of Stevens county is a proper person to commence and prosecute this action in the court of appeals, southern department, western division. (*The State, ex rel., v. Allen,* 5 Kan. 213.)

3. ———— *Sufficient Petition.* Where the petition alleges all the necessary facts to authorize the removal of a county treasurer by the board of county commissioners and the appointment of his successor, in accordance with an act of the legislature of 1874, being an act entitled "An act to provide for the publication of statements showing the condition of the county treasury, examination of the same, and to prevent the improper use of public moneys, and for the punishment thereof," (Gen. Stat. 1889, ¶1709,) and alleges that the defendant was duly removed from the office of county treasurer and his successor appointed and qualified, that the defendant refuses, on demand, to surrender the office and turn over the moneys, papers, books and properties belonging to such office to his successor, and that the defendant is unlawfully exercising the office of county treasurer of Stevens county after he has been duly removed therefrom and his successor appointed, it states a good cause of action against the defendant in the proceeding of *quo warranto* in the courts of appeals.

MEMORANDUM.— Original proceeding in *quo warranto* brought by The State on the relation of A. W. Lamkin, county attorney of Stevens county, Kansas, against John S. Kelly, to oust him from the office of treasurer of said Stevens county. Demurrer of defendant to plaintiff's petition overruled. The opinion herein was filed January 17, 1896.

The statement of the case, as made by JOHNSON, P. J., is as follows :

On the 9th day of September, 1895, an original pe-

tition was filed in the office of the clerk of the court of appeals, southern department, western division, at Garden City, Finney county, Kansas, by A. W. Lamkin, county attorney of Stevens county, Kansas, which petition is as follows :

" Now comes A. W. Lamkin, the duly elected and qualified county attorney of Stevens county, in the state of Kansas, into the Kansas court of appeals, southern department, western division, and gives said court to understand and be informed, that Stevens county is one of the duly organized counties of the state of Kansas, and has been since prior to January 1, 1889, and that he is the duly elected, qualified and acting county attorney of said county ; and that on the 7th day of November, 1893, defendant, John A. Kelly, was duly elected county treasurer of said county, and duly qualified as such treasurer and entered upon the duties of said office, and collected the revenues of said county and received all the public funds payable to said defendant, John A. Kelly, as treasurer of said county until the 6th day of July, 1895 ; and prior to said 6th day of July, 1895, the defendant, John A. Kelly, as such county treasurer, had received large amounts of money as the public funds belonging in said county treasury ; and that upon said 5th day of July, 1895, the books of said defendant, John A. Kelly, as such county treasurer, showed that there was in the hands of the defendant as such county treasurer, of the public funds belonging in the county treasury of said county, the sum of $1,000 ; and that the board of commissioners of said Stevens county, Kansas, on the 3d day of July, 1895, appointed R. C. Crawford and Monroe Traver, who were each citizens and taxpayers of said Stevens county, Kansas, to assist the probate judge of said county in examining and counting the funds in the hands of the county treasurer of said county during the quarter ending September 30, 1895 ; and that on the 5th day of July, 1895, W. T. Stotts, the probate judge of said Stevens county, assisted by R. C. Crawford and Monroe Traver, examined and counted the

funds in the hands of the defendant, John A. Kelly, as county treasurer of said Stevens county; and the said probate judge and examiners, upon such examination and count, found a deficiency in the funds of said county treasury in the sum of $985.56, and immediately reported the fact of said deficiency in writing to the county clerk of said Stevens county, a copy of which report is hereto attached, marked 'Exhibit A,' and made a part hereof; and that Daniel Forker, the county clerk of said Stevens county, Kansas, immediately notified Roland Tull, A. J. Hughes, and J. C. Gerrond, the county commissioners of said Stevens county, of the filing of said report, a copy of which notice is hereto attached, marked 'Exhibit B,' and made a part hereof; and the said commissioners forthwith met to take such action as was necessary to protect and preserve the funds of said county; and the said county commissioners, having duly met as the board of county commissioners of said Stevens county, notified the defendant, John A. Kelly, that an order of the board of county commissioners had been made requiring him to forthwith appear before the commissioners and show cause why said deficiency existed; and the said defendant, John A. Kelly, having been notified of the said order and failing to appear or to account for said deficiency, the said board of county commissioners found that in their judgment that it was necessary and proper to protect the public interest that the said John A. Kelly be removed from the office of county treasurer of Stevens county, Kansas, and therefore ordered that the said John A. Kelly be removed from the office of county treasurer of Stevens county, Kansas, and that C. H. Wright be appointed as county treasurer of said Stevens county, Kansas, to fill the unexpired term of office of said John A. Kelly ending on the second Tuesday in October, 1896; and that the said C. H. Wright executed to the state of Kansas a bond with three or more sufficient securities in the sum of $10,000, to be approved by the board of county commissioners of said county or the chairman thereof, conditioned as required by the statutes in such

cases made and provided; and that the said C. H. Wright was at the time and long prior thereto a legal elector in said Stevens county, Kansas, and eligible to the office of county treasurer of said county; and that on the 6th day of July, 1895, the said C. H. Wright executed his bond as treasurer of said Stevens county, Kansas, in due form, in the sum of $10,000, which bond was duly and legally approved, and the said C. H. Wright duly and legally qualified as the county treasurer of said Stevens county, Kansas; and that on the 11th day of July, 1895, the defendant, John A. Kelly, was duly notified of his removal from said office of county treasurer of Stevens county, Kansas; and that on the 11th day of July, 1895, the said C. H. Wright demanded of the said John A. Kelly that he turn over to him, as his successor in the office of county treasurer of Stevens county, Kansas, all the money, papers, books and records belonging to the said office of county treasurer of Stevens county, Kansas, and which came into the possession of the said defendant, John A. Kelly, as treasurer of Stevens county, Kansas, and defendant, John A. Kelly, refused to deliver to the said C. H. Wright the money, books, papers and records of said office or any part thereof, and the defendant, John A. Kelly, refused to surrender to said C. H. Wright the office of county treasurer of Stevens county, Kansas, and is unlawfully holding and exercising the office of county treasurer of Stevens county, Kansas, after he has, by an order of the board of county commissioners of said Stevens county, Kansas, been removed from said office and his successor in said office duly appointed and qualified, and after the said C. H. Wright is lawfully entitled to said office and to exercise the functions thereof, and to receive the emoluments thereof, contrary to the statutes of the state of Kansas in such cases made and provided. The plaintiff therefore prays judgment ousting the defendant, John A. Kelly, from the office of county treasurer of Stevens county, Kansas, and for all proper relief.''

"EXHIBIT A.

"*State of Kansas, Stevens County, ss.*

"*To Daniel Forker, County Clerk of said county:* The undersigned probate judge of said county and R. C. Crawford and Monroe Traver, citizens and taxpayers of said county, appointed by the board of county commissioners of said county to assist the probate judge of said county to examine and count the funds in the hands of the county treasurer of said county, and having, on the 5th day of July, 1895, made said examination, for the quarter ending September 30, 1895, find a deficiency of said funds in the sum of $985.56, and report the same to you as county clerk of said county.

"This 5th day of July, 1895.

W. T. STOTTS, *Probate Judge,*
R. C. CRAWFORD,
MONROE TRAVER,.
*Examiners appointed by Board.*"

"EXHIBIT B.

"*To Roland Tull, A. J. Hughes, and J. C. Gerrond, each members of the Board of County Commissioners of Stevens county, Kansas:* You, and each of you, are hereby notified that on the 5th day of July, 1895, W. T. Stotts, probate judge of Stevens county, and R. C. Crawford and Monroe Traver, citizens and taxpayers of said county, appointed by the board of commissioners of said county to assist the probate judge of said county in examining and counting the funds in the hands of the county treasurer of said county, have this day reported to me in writing that there is a deficiency in said funds in the sum of $985.56, of all of which you will take due notice. This the 5th day of July, 1895.          DANIEL FORKER,
*County Clerk of Stevens county.*"

"We acknowledge service of the foregoing notice, this 5th day of July, 1895.      ROLAND TULL, *Chairman.*
[SEAL.]                          A. J. HUGHES,
J. C. GERROND,
*County Commissioners.*"

To the petition the defendant filed his demurrer, as follows :

"Comes now the defendant, by his attorneys, Wm. O'Connor and D. P. Lindsay, and demurs to the plaintiff's petition for the following reasons, viz. : (1) The court has no jurisdiction of the person of the defendant.   (2) The court has no jurisdiction of the subject-matter of the action. (3) The plaintiff has not the legal capacity to sue.  (4) The plaintiff, on the relation of A. W. Lamkin, county attorney of Stevens county, Kansas, has not the legal capacity to sue.   (5) There is a defect of parties plaintiff.   (6) There is a defect of parties defendant.  (7) The petition does state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant.   Wherefore the defendant prays that said action be dismissed at plaintiff's costs."

*A. W. Lamkin*, county attorney, for plaintiff ; *A. J. Hoskinson*, of counsel.

*Wm. O'Connor*, and *D. P. Lindsay*, for defendant.

The opinion of the court was delivered by

JOHNSON, P. J. : The first contention of counsel for the defendant under his demurrer is, that the courts of appeals have no jurisdiction in *quo warranto* proceedings.   In the consideration of this objection it is necessary to consider the source from which the jurisdiction of this court is derived.   Some of the courts of this state derive their existence directly from the constitution, which expressly defines and limits their jurisdiction and makes the jurisdiction within these limits exclusive, and provides also that they shall possess such other and further jurisdiction as may be conferred upon them by law.   Where the constitution, in the creation of a court, defines its jurisdiction and makes such jurisdiction exclusive in such court, that

court alone can exercise such jurisdiction; but where the constitution in the creation of a court defines its jurisdiction without making the same exclusive, and in the same instrument gives authority for the creation of such other courts inferior to the supreme court as may be provided by law, the legislature may thereafter, under the constitution, determine what other courts, inferior to the supreme court, are necessary and proper for the interest of the people of the state, and in the creation of such courts may confer upon them such jurisdiction as is not vested exclusively in the supreme court or other courts by the constitution.    The legislature may confer upon such new courts concurrent jurisdiction with the supreme court in all cases where such jurisdiction is not exclusive or inconsistent with the jurisdiction already conferred.

In framing and adopting a constitution for the state, the convention had regard to the wants and interests then existing of the inhabitants of the territory to be included within the new state, and made provision for the judicial department of the state that was then thought to be adequate for the interests and well-being of the people, but put in a provision that, if it should become necessary to increase the judicial branch of the state government, the legislature should have power to create such other courts, inferior to the supreme court, as the requirements of the people might seem to demand.    In creating the judicial department of the state, the constitution provides that the judicial powers shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts inferior to the supreme court as may be provided by law. (Constitution, art. 3, § 1.)    In 1895, the legislature, deeming it necessary to increase the

judiciary of the state, passed an act entitled "An act concerning appellate courts, defining their jurisdiction and the proceedings therein," being chapter 96 of the Laws of 1895. Section 9 of the act creating this court defines its jurisdiction as follows:

" Said courts of appeals, within their respective divisions, shall have original jurisdiction, concurrent with and to the same extent as is now given by law to the supreme court, in *quo warranto, mandamus, and habeas corpus. . . .*"

This act in terms gives the courts of appeals, within their respective divisions, original jurisdiction in cases of *quo warranto* concurrent with the supreme court, and the courts of appeals have jurisdiction, unless such jurisdiction is exclusive in the supreme court.

In *Henderson v. Kennedy*, 9 Kan. 164, BREWER, J., delivering the opinion of the court, says:

"The mere granting of original jurisdiction in an ordinary action to other tribunals does not of itself operate as exclusion. Both acts may stand—both tribunals have jurisdiction. . . . Original jurisdiction in *mandamus* is by the constitution given to the supreme court. The legislature granted such jurisdiction also to the district court. Such grant was sustained by this court. The constitutional grant was held not exclusive. *Judd v. Driver*, 1 Kan. 455."

In *Shoemaker v. Brown*, 10 Kan. 392, the supreme court, by VALENTINE, J., says:

"The mere giving of jurisdiction to one court does not show that it must be exercised exclusively by that court. The constitution gives the supreme court original jurisdiction in *quo warranto, mandamus* and *habeas corpus; . . .* but still it has never been supposed that either of these courts had exclusive original jurisdiction of any of these matters, for the legislature has given such jurisdiction also to the district courts."

In the case of *McNab v. Heald*, 41 Ill. 32, Walker, C. J., delivering the opinion of the court, says :

" Even where courts of law have been vested by legislative enactments with equitable jurisdiction, unless there are prohibitory or restrictive words employed, the uniform interpretation is, that they confer concurrent and not exclusive authority."

It is insisted that the grant of original jurisdiction in the supreme court to hear and determine cases of *quo warranto* under the constitutional provision, no matter in what county the cause of action may arise, and without reference to where the defendant may be summoned, is a grant of power to the supreme court only, and cannot be extended or conferred by the legislature upon any other tribunal or court of special or limited jurisdiction and inferior to the supreme court. The contention is that the writ of *quo warranto* and proceedings in the nature of *quo warranto* are abolished, and the remedies heretofore obtainable under those forms must now be had by civil action ; that *quo warranto*, being a civil action, is local and must be brought in the county where the cause of action or some part thereof arose ; that the code of civil procedure, having provided that a civil action must be brought in the county in which the defendant or some of the defendants reside or may be summoned, prohibits the legislature from conferring jurisdiction upon the courts of appeals, where it may require a citizen to appear in a county other than that of his residence, or where he or some one connected with him in the suit may be summoned.   There is no constitutional prohibition against the legislature conferring concurrent jurisdiction with the supreme court on such new courts as it may create under the constitution.

In the case of *The State, ex rel., v. Allen*, 5 Kan. 213, VALENTINE, J., speaking for the court, says :

"The legislature, by abolishing both the writ of *quo warranto* and proceedings by information in the nature of *quo warranto*, have not thereby destroyed the constitutional jurisdiction of the supreme court in such cases. . . . Article 29 of the code of civil procedure . . . merely provides a new method of procedure for the supreme court in such cases, but does not in the least affect its jurisdiction. The jurisdiction of the supreme court in such cases is coextensive with the state; . . . the legislature have not and cannot limit the jurisdiction of the supreme court in such cases to Shawnee county merely, and the supreme court is not therefore forced to dismiss this action . . . for the reason that the cause of action arose in Jefferson county."

The supreme court of course obtains its original jurisdiction in cases of *quo warranto* from the constitution of the state, and the legislature cannot take that jurisdiction away or limit its scope. It may change the procedure in such cases and the supreme court must follow the new mode of procedure prescribed by the legislature ; but it does not follow that because the supreme court derives its jurisdiction in *quo warranto* proceedings from the constitution the legislature cannot confer concurrent jurisdiction on some new court of its creation, and the act of the legislature conferring original jurisdiction on the courts of appeals within their respective divisions concurrent with the supreme court gives them the same jurisdiction within their respective divisions in *quo warranto, mandamus* and *habeas corpus* as is possessed by the supreme court. This act was passed with the full knowledge of the decisions of the supreme court holding that its jurisdiction in those cases was coextensive with the state,

and the legislature, under the constitutional provisions and the decisions of the supreme court, simply limited the jurisdiction of the courts of appeals to their respective divisions, giving them original jurisdiction concurrent with the supreme court coextensive with the respective divisions thereof.    But even if these observations are not correct and the court cannot take jurisdiction over a party residing beyond the limits of Finney county, the defendant has waived the question of jurisdiction over his person by voluntarily coming into this court and entering his appearance to the action.    Of course, if he had only appeared for the purpose of objecting to the jurisdiction of the court over his person that would not be a waiver, but his appearing to contest the sufficiency of the petition by general demurrer is an appearance to the action and subjects him personally to the jurisdiction of the court, if the court has jurisdiction of the subject of the action.    We do not think the facts stated in the petition constitute a local action of which the court could not take jurisdiction in some other county than the one in which the party is unlawfully exercising an office.

The second reason urged in support of the demurrer of the defendant is, that the county attorney of Stevens county is not a proper party plaintiff in a *quo warranto* proceeding commenced originally in Finney county ; that the county attorney being a county officer, his jurisdiction is limited to Stevens county, and he could not prosecute an action on behalf of the state in any other county than the one of which he is an officer.    This action is not by the county attorney as plaintiff, but is in the name of the state as plaintiff, the county attorney appearing as relator.    The action is commenced under article 29, section 654, of the code

of civil procedure (Gen. Stat. 1889, ¶ 4768), which reads as follows :

"When the action is brought by the attorney general, or the county attorney of any county of his own motion, or when directed to do so by competent authority, it shall be prosecuted in the name of the state, but where the action is brought by a person claiming an interest in the office, franchise, or corporation, or claiming any interest adverse to the franchise, gift or grant which is the subject of the action, it shall be prosecuted in the name and under the direction and at the expense of such persons ; whenever the action is brought against a person for usurping an office, by the attorney general or the county attorney, he shall set forth in the petition the name of the person rightfully entitled to the office, and his right or title thereto ; when the action in such case is brought by the person claiming title, he may claim and recover any damage he may have sustained."

Paragraphs 1795, 1796, General Statutes of 1889, provide :

"A county attorney shall be elected in each county organized for judicial purposes, who shall hold his office for a term of two years. . . . It shall be the duty of the county attorney to appear in the several courts of their respective counties, and prosecute or defend, on behalf of the people, all suits, applications, or motions, civil or criminal, arising under the laws of the state, in which the state or their county is a party, or interested."

This has been the law respecting the election, qualification and defining the duties of county attorneys since October 31, 1868. In the case of *The State, ex rel., v. Allen*, supra, the defendant objected to the authority of the county attorney of Jefferson county appearing in that case and prosecuting the case on

behalf of the state as relator.    The supreme court says :

"The county attorney of Jefferson county is the proper person to commence and prosecute this action. The supreme court will not, therefore, dismiss an action because the attorney general of the state has made no appearance in the case, and does not prosecute the same."

The statute in relation to the election, qualification and duties of county attorneys is the same now as it was when this decision was announced, and the code of civil procedure in relation to the manner in which *quo warranto* proceedings are to be commenced and conducted is the same as when that decision was rendered.    The case of *The State, ex rel., v. Majors*, 16 Kan. 440, was a proceeding in the nature of *quo warranto*, commenced originally in the supreme court by the county attorney of Crawford county to oust the county treasurer of that county from office.    Following the decision of the supreme court in the case of *The State, ex rel., v. Allen*, supra, which was followed by *The State, ex rel., v. Majors*, supra, we must hold in this case that the county attorney of Stevens county was a proper person to prosecute this case in the court of appeals.

The remaining reason urged by defendant in support of his demurrer is that the petition does not state facts sufficient to constitute a cause of action against this defendant.    The petition states that Stevens county is one of the organized counties of this state ; that the defendant, John A. Kelly, was duly elected county treasurer of said county on the 7th day of November, 1893, and that he duly qualified and entered upon the discharge of the duties of his office as such treasurer, and that he has from time to time as

treasurer of Stevens county received the public funds belonging to the treasury of said county; that large sums of money belonging to the public funds of the treasury of Stevens county came into his hands as such treasurer prior to the 5th day of July, 1895; and that on the 3d day of July, 1895, the board of county commissioners of Stevens county duly appointed two persons who were citizens and taxpayers of said county to assist the probate judge of said county in examining and counting the funds in the hands of the county treasurer of such county during that quarter; and that on the 5th day of July the probate judge, together with said two persons, examined the treasury and counted the funds in the hands of the defendant, John A. Kelly, as county treasurer; that upon such examination and counting the funds in the hands of defendant as county treasurer they found a deficiency in the funds in said county treasury in the sum of $985.56, and immediately reported the facts of said deficiency to the county clerk of Stevens county, a copy of the report being attached to the petition and made part thereof; that the county clerk immediately upon the receipt of such report notified the county commissioners of the filing of such report, and the commissioners forthwith met at the office of the county clerk to take such action as was necessary to protect and preserve the funds of said county; that the commissioners, having met as the board of county commissioners of Stevens county, notified the defendant, John A. Kelly, that an order of the board of county commissioners had been made requiring him forthwith to appear before the board of commissioners and show why such deficiency existed; and defendant having been duly notified of said order, and failing to appear or to in any manner account for

said deficiency, that the board of county commissioners found that in their judgment that it was necessary and proper to protect the public interest that the said John A. Kelly be removed from the office of county treasurer of Stevens county; that an order was thereupon made removing the said John A. Kelly from the office of county treasurer of said county of Stevens, and also an order appointing C. H. Wright as county treasurer of said county to fill the unexpired term of office of the said John A. Kelly; that the said C. H. Wright duly qualified as such treasurer, and that said Wright possessed all of the necessary qualifications to entitle him to said office, and that said John A. Kelly was duly notified of the order of his removal and of the appointment and qualification of his successor in office; that after his qualification the said C. H. Wright duly demanded of the said John A. Kelly that he turn over him, as his successor in the office of county treasurer of Stevens county, Kansas, all the moneys, papers, books and records belonging to the said office of county treasurer of said county which came into the possession of the said John A. Kelly as treasurer of said county; that said defendant refused to surrender to the said C. H. Wright the office of county treasurer of Stevens county, and the said John A. Kelly is unlawfully holding and exercising the office of county treasurer of Stevens county, Kansas, after he had, by an order of the board of county commissioners of said county, been removed from said office and his successor in office duly appointed, and after said C. H. Wright is lawfully entitled to said office and to exercise the functions thereof.

The proceedings leading up to the removal of the defendant were under the Laws of 1874, being an act entitled "An act to provide for the publication of state-

ments showing the condition of the county treasury and examination of the same, and to prevent the improper use of public money, and for the punishment thereof." (Gen. Stat. 1889, ¶ 1709.) There is no question made as to the validity of this law, as that question was fully settled in the case of *The State, ex rel., v. Majors*, supra, which held the law constitutional, and that the board of county commissioners had the right to remove the treasurer thereunder and to appoint his successor. We think the petition states such facts, if true, as authorized the board of county commissioners to remove Kelly from the office of county treasurer and appoint a successor to fill out the unexpired term.

The demurrer of the defendant is overruled, and the defendant is granted leave to file an answer to said petition on or before the first Tuesday in February, 1896.

All the Judges concurring.