THE STATE OF KANSAS, *on the relation of S. B. Bradford, Attorney General*, v. OLIVER LEISURE, *as County Clerk of Seward County.*

QUO WARRANTO —*County Clerk—Forfeiture of Office—Insufficient Ground.* As a county clerk is not responsible for the action of the board of county commissioners, and as it is not for him to determine whether the board acts wisely or unwisely, prudently or imprudently, legally or illegally, so long as it keeps within the scope of its authority, the signing by the clerk of a county order for a large amount, upon a claim which has been allowed by the board of county commissioners upon the acceptance of a written contract on file with the clerk, without any special account or voucher being first filed as prescribed by law, is not sufficient ground to forfeit his office, or to remove him therefrom, in the absence of any testimony showing any corruption upon his part, or any benefit thereby.

*Original Proceeding in Quo Warranto.*

THE opinion, filed at the session of the court in July, 1889, states the material facts.

*L. B. Kellogg,* attorney general, *Webb, Campbell & Spencer, George W. Collins,* and *Samuel N. Wood,* for plaintiff.

*Joseph Wisby,* and *J. D. McFarland,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: Oliver Leisure was elected county clerk of Seward county on the 6th day of November, 1886, and subsequently duly qualified as such officer. The charge in the action pending against him for removal from office is that as county clerk he signed a county warrant of $5,100 for G. S. Stein, and that he did so unlawfully and corruptly, without any account being filed or verified as prescribed by law. The petition alleges, however, that a majority of the board of county commissioners of Seward county, viz., T. A. Scates, chairman, and W. W. Kimball, allowed the claim of $5,100 to G. S. Stein, and therefore the county clerk simply obeyed the direction of the board in issuing the order. It appears from the evidence that G. S. Stein made a proposition to the board of county commissioners to furnish money to aid in funding the floating indebtedness of Seward county, and for his services and the furnishing of certain funds he was to receive fifteen per cent. This proposition was accepted by the board of county commissioners, and upon the alleged contract, Scates, the chairman of the board, directed the county clerk to issue the order of $5,100. The signing of this order by Leisure is complained of.

Section 44, chapter 25, Comp. Laws 1885, page 270, provides:

"It shall be the general duty of the county clerk: First, to record in a book to be provided for that purpose, all proceedings of the board. Second, to make regular entries of

18—42 KAS.

their resolutions and decisions in all questions concerning the raising of money. Third, to record the vote of each commissioner on any question submitted to the board, if required by any member. Fourth, sign all orders issued by the board for the payment of money. Fifth, to preserve and file all accounts acted upon by the board, with their action thereon; and he shall perform such special duties as are required of him by law."

In *The State v. Allen*, 5 Kas. 213, it was decided that—

"It is the duty of the county clerk to attend the sessions of the board of county commissioners, keep a record of their proceedings, sign the record, and attest the same with the county seal. He is merely a clerk in such cases for the board; having no supervisory control over, and not responsible for their action, it is not for him to determine whether they act wisely or unwisely, prudently or imprudently, legally or illegally, at least so long as they keep within the scope of their authority."

There is not any testimony that Leisure received any part of the $5,100 allowed, or that he was in any way benefited thereby.

We do not think upon the testimony that the action against him can be sustained, and therefore judgment will be rendered in his favor with costs.

All the Justices concurring.