No. 46,778

Alphonso J. Ertl, *Appellant*, v. Board of County Commissioners of the County of Riley, A Body corporate and politic; and the Planning and Zoning Board of Riley County, Kansas: G. Rex Stone, Shirley L. Stone, James S. Hunter, Jr., and Margaret S. Hunter, Interveners, *Appellees*.

(505 P. 2d 700)

filed January 20, 1973. ▮▮▮▮▮▮      Opinion

*Charles S. Scott*, of Scott, Scott, Scott & Jackson, of Topeka, argued the cause and was on the brief for the appellant.

*Dan H. Myers*, of Fick & Myers, of Manhattan, argued the cause, and *Larry McGrath*, county attorney, was with him on the brief for the appellees.

The opinion of the court was delivered by

Fromme, J.: This is a mandamus action brought by a landowner, Alphonso J. Ertl, to require the Board of County Commissioners of Riley County to proceed with the rezoning of land from agricultural zoning to mobile home park zoning. The district court denied relief and the landowner appeals.

The question presented in the trial court was whether the board had affirmatively resolved to rezone the land by unanimous vote of the board. It was agreed by all parties that the proposed rezoning action under K. S. A. 19-2920 as amended required the unanimous vote of the county commissioners. The petitioner's land was located within the boundaries of a county comprehensive plan previously adopted by the county pursuant to K. S. A. 19-2914 *et seq.*, as amended, and it had been zoned for agricultural purposes. There-

after, a request was made by Mr. Ertl to rezone the land for mobile home park purposes. A hearing was held by the county planning board after proper notice and the planning board recommended denial of the proposed change. A meeting to consider the recommendation of the planning board was held by the board of county commissioners. It was at this meeting on October 18, 1970, that the questioned action by the board of county commissioners took place. Apparently a protest against the amendment of the county comprehensive plan was filed, thus requiring a unanimous vote to secure the rezoning change.

The interveners listed in the caption are property owners who feel they would be adversely affected by the proposed rezoning. The petitioner will be referred to as the landowner or as Mr. Ertl and the board of county commissioners will be referred to as the board.

The trial court heard testimony as to what transpired during the October 18th meeting of the board. All three county commissioners testified at the trial, as did the landowner. The three commissioners, Messrs. Rader, Grace and Sand, were present at the October 18th meeting. During the discussions on the proposed rezoning change Mr. Sand had continued throughout to express his opposition to the change. When one of the commissioners asked if the county clerk should be called into the meeting to record the vote the members decided it was not necessary for the clerk to be called. The chairman, Mr. Rader, made an oral motion that the rezoning be approved. Mr. Grace orally voted in favor of the motion. Mr. Sand did not vocalize his vote. However, after the meeting Messrs. Rader and Grace were of the opinion that the vote on the motion was split two to one. The landowner Ertl testified that when he talked with Mr. Rader after the meeting he was advised that Mr. Sand objected to the rezoning and "it was a split vote."

A resolution of the board was drawn up in writing but it did not record the vote of the individual members of the board. Three signature lines were provided below the resolution but only two signatures were affixed, Mr. Rader's and Mr. Grace's.

Mr. Sand testified that his position on the rezoning change had been made clear to the press and to everybody else. He opposed it because he wanted to uphold the decision and recommendation of the planning board, which had held adequate hearings on the matter. He further testified that the meetings of the county com-

missioners were held in an informal manner. He certainly "didn't vote yes" on the rezoning. He intended to rely on the withholding of his signature from the resolution to record his negative vote on the proposition. He testified that he was not personally interested in any land affected by the proposed change, had no conflict of interest in the matter and it was not his intention to abstain from voting. In his own mind he considered himself as having voted against the change in zoning.

After hearing the evidence the court found that Mr. Sand did not abstain from voting on the resolution and, in view of the long-standing informal procedures followed by the board, that the absence of Mr. Sand's signature from the resolution should be considered as a negative vote against the rezoning. Accordingly the court held that Mr. Sand voted no and that the vote of the board was not unanimous as required by the statute. The relief was denied.

K. S. A. 19-305 provides that *if required by any member* it shall be the duty of the county clerk to record the vote of each commissioner on any question submitted to the board. The present controversy might have been avoided if the county clerk had been requested to record the vote. No formal vote was recorded and the resolution on the zoning change did not reflect the individual vote of the commissioners except by the two signatures affixed.

This court has recognized that the minutes of meetings of governing bodies of governmental units are not always kept in a complete form so as to fully reflect the action taken by such governmental units. In certain cases this court has held parol evidence may be received to show the substance of such proceedings. See *City of Troy v. A. & N. Railroad Co.*, 11 Kan. 519, reh. den. 13 Kan. 70; *Water-Works Co. v. City of Columbus*, 46 Kan. 666, 26 Pac. 1046; and *Moore v. City of Pratt*, 148 Kan. 53, 79 P. 2d 871.

The thrust of appellant's argument on appeal is based upon the premise that Mr. Sand abstained from voting and the two affirmative votes for the change made the vote unanimous as required by the statute. The authorities are somewhat divided on the question of whether a vote is unanimous when those abstaining on a voice vote have previously expressed opposition. See Annotation in 43 A. L. R. 2d 698, at 722 and 752; and 56 Am. Jur. 2d, Municipal Corporations, §§ 168-170, pp. 219-223.

Webster's Third New International Dictionary (Unabridged)

defines "abstain" as "withhold oneself from participation: refrain voluntarily: withhold oneself deliberately from an action." It is clear from the evidence in this case that Mr. Sand did not withhold himself from participation in the discussions, that he did not refrain voluntarily, and that he did not withhold himself deliberately from action on the zoning change. If the failure to vocalize his vote is considered a withholding of his vote then such failure to vocalize his vote occurred mistakenly and not deliberately. To abstain means to refrain voluntarily or to withhold oneself deliberately from an action.

Any further discussion herein of the effect of an abstention on the unanimous nature of the vote would be dicta. The trial court on the basis of substantial competent evidence found that Mr. Sand voted no and that he did not abstain. We agree.

Parol evidence may be received to show the substance of the actual vote of each member of a board of county commissioners when no record of such vote has been taken by the county clerk as directed in K. S. A. 19-305, *third*, or when no such record is made in the minutes of the meeting at which the vote was taken.

There was substantial competent evidence in the present record that the vote of the board of county commissioners on the zoning change was not unanimous as required by the statute and the judgment of the district court is affirmed.